**BEFORE THE**
**UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

```
-------------------------------------------------------------------------x
IN RE:                                        :
TLI COMMUNICATIONS, LLC PATENT                :
LITIGATION                                    :
                                              :    MDL Docket No. 2534
                                              :
                                              :
                                              :
                                              :
                                              :
-------------------------------------------------------------------------x
```

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR TRANSFER AND CONSOLIDATION OF PRETRIAL PROCEEDINGS**

# TABLE OF CONTENTS

I.          INTRODUCTION................................................................................................1

II.         BACKGROUND................................................................................................3

III.        ARGUMENT ....................................................................................................6

    A.     The Absence Of Common Factual Issues Makes Consolidation
        Inappropriate.................................................................................................6

        1.     Proof of Patent Infringement Presents Unique Fact Questions for
              Each Defendant. ...............................................................................7

        2.     Proof of Individual Patent Infringement Damages Presents Unique
              Fact Questions for Each Defendant. .................................................8

        3.     These Disparate and Non-Overlapping Questions of Fact Must
              Outweigh the Assertion of One Common Patent. ...............................9

    B.     Consolidation And Transfer Would Not Promote Convenience ................13

        1.     Consolidation of Actions to N.D. Cal. or Delaware  Would Not
              Promote Efficiency or Economy......................................................13

        2.     Defendants' Transfer Request Is Intended To Cause Delay...........14

        3.     Alternative Methods Can Achieve Efficiencies Less Burdensomely
              Than Consolidation. ........................................................................16

    C.     To The Extent The Panel Believes Consolidation Is Appropriate, The
        Eastern District Of Virginia Is The Most Appropriate Forum. ..................17

        1.     The Eastern District of Virginia Cases Will Far Outpace Delaware. ..............17

        2.     The Eastern District of Virginia Cases Subsume the Delaware Cases...........18

        3.     The Northern District of California is Inappropriate and Irrelevant.............19

IV.        CONCLUSION ...............................................................................................20

i

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*In re Abbott Laboratories, Inc., Similac Products Liability Litigation,*
763 F. Supp. 2d 1376 (J.P.M.L. 2011) .................................................................. 8

*In re Acacia Media Techs. Corp. Patent Litigation,*
360 F. Supp. 2d 1377 (J.P.M.L. 2005) ................................................................ 10

*In re Allen Compound Bow Patent Litigation,*
446 F. Supp. 248 (J.P.M.L. 1978)............................................................ 12, 16, 17

*In re Amtrak Train Derailment at Frankewing, Tenn., on October 1, 1975,*
431 F. Supp. 916 (J.P.M.L. 1977)...................................................................... 8, 9

*In re Asbestos School Products Liability Litigation,*
606 F. Supp. 713 (J.P.M.L. 1985)...................................................................... 7, 8

*In re Bourns Patent Litigation,*
385 F. Supp. 1260 (J.P.M.L. 1974)...................................................................... 12

*In re Cable Tie Patent Litigation,*
487 F. Supp. 1351 (J.P.M.L. 1980)...................................................................... 16

*In re Cessna Aircraft Distributorship Antitrust Litigation,*
460 F. Supp. 159 (J.P.M.L. 1978)........................................................................ 10

*In re CMA Mortg., Inc., Fair Credit Reporting Act (FCRA) Litigation,*
536 F. Supp. 2d 1363 (J.P.M.L. 2008) ................................................................ 16

*In re Commonwealth Oil/Tesoro Petroleum Sec. Litigation,*
458 F. Supp. 225 (J.P.M.L. 1978)........................................................................ 20

*In re Commonwealth Sci. & Indus. Research Org. Patent Litigation,*
395 F. Supp. 2d 1357-58 (J.P.M.L. 2005) .......................................................... 16

*In re CVS Caremark Corp. Wage and Hour Employment Practices Litigation,*
684 F. Supp. 2d 1377 (J.P.M.L. 2010) ................................................................ 16

*In re Cygnus Telecomms. Tech., LLC, Patent Litigation,*
177 F. Supp. 2d 1375 (J.P.M.L. 2001) ................................................................ 10

*In re Depo-Provera Products Liability Litigation,*
499 F. Supp. 2d 1348 (J.P.M.L. 2007) ................................................................ 16

*Georgia-Pacific Corp. v. United States Plywood Corp.,*
318 F. Supp. 1116 (S.D.N.Y. 1970) ...................................................................... 9

*In re Gerber Probiotic Products Mktg. & Sales Practices Litigation,*
MDL 2397, 2012 WL 4955232 (Oct. 16, 2012)................................................... 16

*In re Klein,*
923 F. Supp. 2d 1373 (J.P.M.L. 2013) ................................................................ 15

*Markman v. Westview Instruments, Inc.,*
  517 U.S. 370 (1996) ..........................................................................................7, 12

*In re Mosaid Techs., Inc. Patent Litigation,*
  283 F. Supp. 2d 1359 (J.P.M.L. 2003) ..........................................................10

*In re Move Artwork Copyright Litigation,*
  473 F. Supp. 2d 1381 (J.P.M.L. 2007) ..........................................................10

*In re Papst Licensing GmbH Patent Litigation,*
  No. 1928, 1999 U.S. Dist. LEXIS 15871 (J.P.M.L. Oct. 12, 1999) ....................17

*In re Shipley Co., Inc. Patent Litigation,*
  383 F. Supp. 847 (J.P.M.L. 1974) ..................................................................11

*In re Sicilia Di R. Biebow & Co. Contract Litigation,*
  490 F. Supp. 513 (J.P.M.L. 1980) ..................................................................14

*In re Stirling Homex Corp. Sec. Litigation,*
  442 F. Supp. 547 (J.P.M.L. 1977) ..................................................................20

*In re Student-Athlete Name & Likeness Litigation,*
  763 F. Supp. 2d 1379 (J.P.M.L. 2011) ..........................................................7, 20

*In re Sumatriptan Succinate Patent Litigation,*
  381 F. Supp. 2d 1378 (J.P.M.L. 2005) ............................................................7

*In re Sundstrand Data Control, Inc. Patent Litigation,*
  443 F. Supp. 1019 (J.P.M.L. 1978) ................................................................19

*In re Truck Acc. Near Alamagordo, New Mexico, on June 18, 1969,*
  387 F. Supp. 732 (J.P.M.L. 1975) ..................................................................15

*In re U.S. Navy Variable Reenlistment Bonus Litigation,*
  407 F. Supp. 1405 (J.P.M.L. 1976) ................................................................12

*In re UPS Supply Chain Solutions, Inc., Fair Labor Standards Act (FLSA) Litigation,*
  729 F. Supp. 2d 1356 (J.P.M.L. 2010) ............................................................6

*In re Wyeth Patent Infringement Litigation,*
  445 F. Supp. 992 (J.P.M.L. 1978) ..........................................................7, 12, 13

*In re Yellow Brass Plumbing Component Products Liability Litigation,*
  844 F. Supp. 2d 1378 ......................................................................................8

**Statutes**

28 U.S.C. § 1407 .......................................................................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6)..........................................................11

Plaintiff TLI Communications, LLC ("TLI") submits this Memorandum of Law in Opposition to defendants Facebook, Inc.'s and Instagram, LLC's Motion For Transfer and Consolidation of Pretrial Proceedings Pursuant to 28 U.S.C. § 1407 ("Motion").  To the extent the Panel believes that the actions[1] should be consolidated for Pretrial Proceedings, TLI moves pursuant to 28 U.S.C. § 1407 to have the actions consolidated for pretrial proceedings in the United States District Court for the Eastern District of Virginia ("Virginia").

## I.      <u>INTRODUCTION</u>

In the actions that TLI originally filed in the District of Delaware ("Delaware"), defendant Google filed a motion to dismiss, joined by the other defendants, alleging deficiencies in TLI's complaints in part because TLI did not name users of the defendants' products and services.  In an effort to address defendants' concerns, TLI dismissed the complaints against seven defendants in Delaware, identified users of their products and services, and filed substantially amended complaints against them and their users in the Eastern District of Virginia—where those users were located—addressing all of the issues Google identified in its motion to dismiss.

Having lost their opportunity to delay these cases in Delaware through motion practice due to their own insistence that TLI identify users of their products and services, defendants now seek another way to delay these cases.  Defendants falsely suggest that their cases, involving specific co-defendant users located only in Virginia, somehow overlap factually with cases brought in Delaware against a different group of defendants, who provide different products and services, and who have different users.  Indeed, a closer review of the situation reveals not only the lack of factual overlap between all of these cases, but also that consolidation would result in increased *inefficiency* and substantial delay.

Defendants have not identified (and cannot identify) any facts indicating that the products and services offered, provided, or used by any defendant are the same.  Each product was created by

---

[1] The pending actions are: the ten "Delaware actions" pending in the U.S. District Court for the District of Delaware (1:13-cv-01922-GMS through 1:13-cv-01936-GMS), and the seven "Virginia actions" pending in the U.S. District Court for the Eastern District of Virginia (1:14-cv-00136 through 1:14-cv-00142 TSE-IDD), as listed on pp. 1-2 of the Motion.

a different company, for a different purpose, operates in a different way.  For example, the services provided by Lucidiom[2] (which is located in Virginia), Facebook, SnapChat, Dropbox, and Tripadvisor are incredibly varied and wholly dissimilar.  Just these five cases, let alone each of the others, will require separate and unique discovery merely to identify how each service operates.[3]  On top of this technical discovery, separate and unique discovery will also have to be conducted for each defendant with respect to damages.  In short, given the factual disparities between the various defendants and accused products and services, consolidation would not promote any efficiencies.

Turning to validity, no defendant has challenged the '295 Patent's validity, and no prior art has been identified.  Even assuming, *arguendo*, that validity was to become an issue, it is likely that defendants' positions on this issue would diverge: since the defendants' products and services work in different ways, it is foreseeable that defendants may proffer different claim constructions in order to most advantageously position themselves to argue non-infringement.  Such discord between the defendants would undermine the only possible source of common issues of fact (aside from the fact that they all infringe the same patent).  Moreover, since the actions in Virginia will proceed quicker than those in Delaware, collateral estoppel ensures that any invalidity determination in Virginia would apply to the Delaware actions, rendering them moot.

For these reasons, the Panel should deny defendants' Motion in its entirety because defendants have failed to show: (i) the existence of sufficient numerous, complex, or unresolved common issues of fact across all of the Virginia and Delaware actions to be consolidated; (ii) how the efficiencies of transfer and consolidation outweigh the resulting inconvenience to the parties and witnesses; and (iii) how a transfer of the Virginia and/or Delaware actions to either the Northern District of California ("N.D. California") or Delaware promotes the just and efficient conduct of the actions.  In the event this Panel favors transfer and consolidation, TLI respectfully submits that

---

[2] Lucidiom is a provider of its own unique infringing products and services.  Richmond Camera Shop, another defendant, rebrands Lucidiom's infringing platform under its own name.

[3] Furthermore, it is likely that each defendant will insist that their highly confidential documents and software code be shielded and segregated from other defendants under an appropriate protective order.  The need for such protection further evidences the differences between the defendants: if all defendants' products and services were the same, there would be no need for such protective orders.

centralization in the Eastern District of Virginia would be the most efficient location for all parties and the judiciary.

## II.    BACKGROUND

TLI is the owner by assignment of the patent-in-suit, *i.e.,* U.S. Patent No. 6,038,295 (the "'295 Patent"[4]), which is directed to the capturing, uploading and organization of digital images from a camera phone to a server, and is set to expire in less than three years.  Defendants[5] directly and indirectly infringe the '295 Patent by providing and using various products and services that practice the claimed invention to facilitate the recording, transmitting and categorizing of pictures by camera phones.  The products at issue are specific to the individual defendants and vary from defendant to defendant.  TLI's infringement theory is not based on defendants' use of any common standard, device, or component; rather, each of defendant's accused systems and businesses is unique.  Nevertheless, defendants move to have the Virginia and Delaware actions consolidated, even though each defendant shares nothing in common with one another except for the fact that they are all alleged to infringe the same patent.

The pending actions are all in their initial stage.  No scheduling orders have issued and discovery has yet to begin.  Four of the thirteen Delaware defendants and six of the fifteen Virginia defendants have not joined in the Motion, meaning that the moving defendants are eighteen of twenty-eight defendants in seventeen actions brought by TLI that are pending in the District of Delaware and the Eastern District of Virginia.  Further, there are only two effective actions at issue here, the Delaware actions and the Virginia actions.  As defendants concede, the Delaware actions have all been identified as "related" actions and the Virginia actions have all been identified as

---

[4] The '295 Patent is entitled the "Apparatus and Method for Recording, Communicating and Administering Digital Images."

[5] *See* Mot. at 1-3, n.1.  The non-moving Delaware defendants are Snapchat, Inc. (No. 13-1931); TripAdvisor LLC (No. 13-1932); Yelp Inc. (No. 13-1936); and SmugMug, Inc. (No. 13-1930).  The non-moving Virginia defendants are:  Google, Inc. (No. 1:14-cv-139); Lucidiom, Inc. and Richmond Camera Shop, Inc. (No. 1:14-cv-141); AV Automotive, LLC (No. 1:14-cv-136, 138-140, and 142), Max Media LLC (No. 1:14-cv-138-140 and 142); and Hall Automotive, LLC (No. 1:14-cv-137, 142).  Importantly, no defendant was sued in multiple jurisdictions: each is facing litigation in either Delaware or Virginia, not both.

"related" actions.  It is thus virtually guaranteed that Judge Sleet, who is handling the Delaware actions, will consolidate the Delaware actions at least for discovery purposes, and that Judge Ellis, who is handling the Virginia actions, will consolidate the Virginia actions at least for discovery purposes.  *See, e.g.,* Manual Complex Lit. § 33.23 (4th ed.) ("Consolidation often is warranted where more than one action involving or related to the patent is pending before the same court.")

In moving to dismiss TLI's original sixteen Delaware actions and in an attempt to shift their own responsibility and liability, the original defendants took the position that the "primary" infringers were all unnamed users.  Now that users have been named, the defendants have reversed gears, arguing that the named users are suddenly "peripheral" and "small," and that they themselves are "primary" and no longer peripheral.[6]  In other words, for purposes of dismissing the Delaware Complaints, defendants attempted to pass off liability to the users, but now that commercial users are named in the Virginia Complaints, defendants seek to marginalize and ignore the users.  This is a classic case of trying to have your cake and eat it too, and defendants should be judicially estopped from taking such a contradictory position.  *See* Del. Def's Mot. to Dismiss, filed Feb. 27, 2014, at 12, 14 ("TLI's claims that Defendants are liable for others' use [of the claimed system] should be dismissed . . . . [m]obile phone users direct and control their own actions . . . . [A] defendant who provides software and technical assistance to a customer is not vicariously liable as a matter of law for the actions of its customers . . . .")

Defendants' venue-shopping argument also fails in view of TLI's complaint against Virginia-based Lucidiom, Inc. and Richmond Camera Shop, Inc., who provide their own, unique infringing image-uploading platform.  These defendants have no relevance to the other complaints or to any other defendant.  It is defendants, not TLI, who are forum shopping in an effort to delay the actions as long as possible.

---

[6] Defendants' argument that TLI failed to name commercial users of the infringing platforms at issue in Delaware misses the point.  The Delaware defendants, unlike the Virginia defendants, do not publish the identity of their users, thus making it difficult to impossible for TLI to identify users absent discovery.

Defendants' characterization of themselves is similarly faulty.  Defendants attempt to overcome the strong presumption against consolidation by wrongfully classifying themselves into two different groups: (1) the "Primary Defendants" accused of providing an infringing product or process; and (2) certain purportedly peripheral "User Defendants" accused of using the product or process of a Primary Defendant.  Mot. at 4.  Notwithstanding the fact that TLI accused *every* defendant of using the infringing product or processes and that "use" alone is infringement, *see* 35 U.S.C. § 271(a), meaning that all defendants are in the same group, as noted above the moving defendants should be judicially estopped from making such an argument, having argued the exact opposite in their motion to dismiss TLI's original Delaware complaints.  Now that TLI named those users as direct infringers, defendants wish to change tack, create confusion and take contradictory positions before different courts.

Not only does Defendants' characterization contradict the position they took in their motion to dismiss (where defendants characterized the purported user defendants—who were not yet named in a complaint—as the primary participants), but it is an unhelpful characterization that fails to distinguish anyone.  Under Defendants' characterization, Facebook, and every other defendant, would each be a "Primary Defendant" and also a "User Defendant."[7]  But each defendant in the Delaware and Virginia actions is a separate entity that provides distinct services and products; indeed, many are direct competitors.  Each Server Defendant implements its own, unique image-uploading platform, utilizing its own various technologies and methods.  Each thus has the potential to infringe *distinct* claims of the '295 Patent.  Significantly, TLI's infringement theories are based on the individual systems and products of the various defendants; there is no common product,

---

[7] Similarly, Defendants characterization of certain Defendants as purportedly "small" makes no sense.  For example, Virginia defendant Max Media, who is accused of being a direct '295 Patent infringer via its use of Virginia defendants Google's, Pinterest's and Twitter's image-uploading platforms, operates over 40 radio stations.  Similarly, Virginia defendant Hall Automotive LLC, who is accused of being a direct '295 Patent infringer via its use of Virginia defendants Facebook's, Instagram's and Apple's image-uploading platforms, operates 20 car dealerships.  Although Max Media and Hall Automotive do not publish their revenues, they are presumably larger than at least Delaware defendants Imgur, Smugmug and WHI (who also do not publish their revenues).

standard or system.  Therefore, the discovery required from each defendant will be unique to each, and diverse from the discovery needed from one another.  Contrary to defendants' assertion, the facts of these cases do not allow for the straightforward "lumping" all defendants into two vague, ambiguous and contradictory categories.[8]

### III.   ARGUMENT

#### A.   The Absence Of Common Factual Issues Makes Consolidation Inappropriate.

Defendants have failed to meet their high burden of demonstrating common issues of fact between these cases.  Indeed, defendants cannot show that "common questions of fact between these actions are sufficiently complex and/or numerous [or unresolved]" to justify transfer and consolidation of the Virginia actions with the Delaware actions because, as noted above, each of the accused products is specific to the individual defendants and the accused products vary from defendant to defendant.  *See In re UPS Supply Chain Solutions, Inc., Fair Labor Standards Act (FLSA) Litigation*, 729 F. Supp. 2d 1356 (J.P.M.L. 2010).  The services provided by Lucidiom, Facebook, SnapChat, Dropbox, and Tripadvisor serve different purposes and are completely different.  TLI will require separate, distinct, and non-overlapping technical discovery from each of these companies for its infringement case.[9]  Moreover, each defendant's accused system and business is unique, and hence fact issues of infringement, liability and damages discovery will be unique to each

---

[8] If any grouping of defendants is to be made, a more helpful characterization would be "Server Defendants" or "Direct-Only Defendants."  Server Defendants are both direct infringers (*i.e.*, they make and use the infringing platform) and also indirect infringers (*i.e.*, they induce and contribute others to use the infringing image-uploading platform); Direct-Only Infringers are direct infringers of the image-uploading platforms (via their use of the platform), but not necessarily indirect infringers (*i.e.*, they do not necessarily induce anyone else to use the infringing platform).  Attached as Exhibit 1 is a table that lists all of the Virginia defendants and identifies the Server Defendants and Direct-Only Defendants.  Further, even though the same Direct-Only Infringers are named in multiple Virginia actions, they have each used different alleged infringing systems of different Server Defendants.  For instance, if a Direct-Only Infringer uses both the Google system and Twitter system to advertise its products and services, then that defendant is named as a co-defendant with Google and Twitter.

[9] There is even less justification for consolidating TLI's cases because TLI's infringement theory is not based on defendants' use of any common standard, device, or component.

individual Defendant.  Defendants have not, and cannot meet "their burden of convincing [the Panel] that [the] common factual questions are sufficiently complex or that the accompanying discovery will be so time consuming as to justify transfer under Section 1407."  *In re Wyeth Patent Infringement Litig.*, 445 F. Supp. 992, 993 (J.P.M.L. 1978).

Even if some common facts were to exist, since only two effective actions are at issue transfer is inappropriate and would be unduly burdensome.  In such situations, it is easy for the parties to manage and coordinate discovery.  *See In re Sumatriptan Succinate Patent Litigation*, 381 F. Supp. 2d 1378 (J.P.M.L. 2005) ("[T]he panel finds that Section 1407 centralization would neither serve the convenience of the parties and witnesses nor further the just and efficient conduct of this litigation, which essentially involves only two actions pending in two districts [because of consolidation in the districts].")*; In re Student-Athlete Name & Likeness Litigation*, 763 F. Supp. 2d 1379, 1380 (J.P.M.L. 2011) ("[W]e are persuaded that this litigation can be effectively managed by informal coordination among the parties.  Nine actions are already pending in the ND California . . . in a consolidated fashion.  There are, therefore, effectively only three actions pending . . . .")

### 1.     Proof of Patent Infringement Presents Unique Fact Questions for Each Defendant.

As a matter of law, proof of patent infringement is distinct as to each defendant and its technology.  *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 374 (1996) ("Victory in an infringement suit requires a finding that the patent claim 'covers the alleged infringer's product or process' . . .")*; see also In re Asbestos School Products Liability Litigation*, 606 F. Supp. 713, 714 (J.P.M.L. 1985) (denying MDL consolidation where common questions of fact did not predominate over individual questions).

In *In re Yellow Brass Plumbing Component Products Liability Litigation*, the Panel was "hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products . . . [where] several actions contain multiple unrelated defendants . . . ."  844 F. Supp. 2d 1377, 1378-79 (J.P.M.L. 2012).  Exactly the same can be said of the defendants in these cases, their products, and the markets in which they operate.  Here, each defendant's accused

products differ from other defendants' products and services.  As such, each of the Virginia and Delaware actions will give rise to substantially different fact issues because the accused products, including website platforms and computer servers, and the nature of uploading digital images, is different for each individual defendant.  Because infringement is unique to each defendant and each infringing platform, this difference in individual products and service must outweigh any common issues of fact or law.  *See id.; see also In re Abbott Laboratories, Inc., Similac Products Liability Litigation*, 763 F. Supp. 2d 1376, 1376-77 (J.P.M.L. 2011) (holding that individual facts predominated over alleged common fact questions where discovery and motion practice may concern particular purchased products, any injuries caused, the composition of the products and advertising of each product); *In re Asbestos School*, *supra*, 606 F. Supp. at 714.

Moreover, because of the substantial differences between defendants' products and services, different defendants are likely to infringe different sets of the '295 Patent's claims.  For example, and subject to confirmation in discovery, some defendants may trim or limit the size of the digital images they upload, infringing dependent claims 10 and 11, whereas others may upload whatever is sent. Similarly, some defendants may capture the telephone number of a smartphone (*e.g.*, dependent claims 7, 22), or analyze speech (*e.g.* dependent claims 12, 13), while others may not.

Defendants thus fail to demonstrate that there are substantial common factual issues in each of the Virginia and Delaware actions sufficient to support consolidation.  *See In re Asbestos School*, *supra*, 606 F. Supp. at 714; *In re Yellow Brass, supra*, 844 F. Supp. 2d 1378-79; *In re Abbott Laboratories*, *supra*, 763 F. Supp. 2d at 1376-77.  Indeed, in proving infringement, the significant differences among accused systems will implicate predominantly different fact issues.

### 2.     Proof of Individual Patent Infringement Damages Presents Unique Fact Questions for Each Defendant.

Damages is an issue of fact unique to each defendant and to each action.  *In re Amtrak Train Derailment at Frankewing, Tenn., on October 1, 1975*, 431 F. Supp. 916, 918 (J.P.M.L. 1977).  Defendants do not, because they cannot, argue that the "reasonable royalty" measure of damages would result in

common issues of fact between the actions. *See, e.g., Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).[10]

To the contrary, infringement damages for each accused product will be unique and different from every other defendant's accused products. *Id.; In re Amtrak, supra*, at 918. Not only does the revenue generated from each alleged infringing product differ per each defendant, but also the focus on damages discovery and analyses will heavily be directed to each defendant's *discrete* infringement, when each defendant began infringing the '295 Patent, the length of time each defendant has infringed the '295 Patent, and the value each particular defendant has derived from the use of the patented inventions. For example, some defendants' entire product or service implicates infringement of the '295 Patent, while others offer non-infringing products or services along with infringing ones. Moreover, the likelihood that different claims of the '295 Patent will be asserted against different defendants further individualizes the damages analysis and related discovery. Thus, the damages inquiry involves facts particular to each separate defendant.

**3.    These Disparate and Non-Overlapping Questions of Fact
Must Outweigh the Assertion of One Common Patent.**

To distract the Panel from the absence of any common questions of fact, Defendants assert that merely because both actions "share the same patent-in-suit," both actions must "share factual and legal questions concerning such matters as patent invalidity and claim construction." Mot. at 6. However this conclusory position is entirely unsupported and is actually contradicted by the irrefutable and significant differences between all defendants' products and services across all of the actions. *See In re Cessna Aircraft Distributorship Antitrust Litigation*, 460 F. Supp. 159, 161–162 (J.P.M.L.

---

[10]  The nine defendant-specific factors considered when assessing a "reasonable royalty" of patent damages include the following: (1) the rates paid by the defendant for use of comparable patents; (2) the territory and customers of the licensee for the licensed technology; (3) the effect of using the patented specialty in promoting sales of the licensee's other goods or services; (4) the licensee's commercial success with the patented technology; (5) the extent of the licensee's infringing use of the patented technology; (6) the portion of licensee's profit attributable to use of the patented technology; (7) the opinion testimony of qualified experts retained by each licensee; (8) the nature and scope of the license; and (9) the amount the prudent licensee would have been willing to pay for a license in an arm's length negotiation.

1978) ("[a]lthough common questions of fact may exist, a mere showing that such questions exist is not sufficient, in and of itself, to warrant transfer by the Panel.")  Indeed, Defendants fail to cite a single case ordering the consolidation on the basis of such limited similarity of "same patent."  *Cf. In re Move Artwork Copyright Litigation*, 473 F. Supp. 2d 1381, 1382 (J.P.M.L. 2007) (insufficient common questions when asserted common questions were either generic listing of elements found in every copyright and trademark infringement action, or issues that arise in any situation involving multiple actions brought against common defendants.)   It is the unique questions of fact as to infringement and damages that must predominate over any minimal commonality arising from the fact of one overlapping patent, not just the identity of the patent.

However, as discussed in detail above, each defendant in each of the Delaware and Virginia actions makes or uses completely different products, provides wholly different services, and utilizes differentiating algorithms, website platforms and servers to upload digital images.  For instance, Facebook's product concerning the uploading and organization of digital images is distinct from Dropbox's product regarding the uploading and sharing of digital images.  Thus, the liability and infringement discovery needed for each individual defendant will be independent and separate.

Defendants erroneously rely on *Mosaid, Acacia*, and *Cygnus* to conclude summarily that common issues of fact are guaranteed where there is an overlapping patent, so as to warrant consolidation.  Mot. at 6-7.  However, *Mosaid, Acacia*, and *Cygnus* all involved a judge who had prior familiarity with the patent(s) at issue, in contrast to the present situation.  In *Acacia*, patent infringement cases involving the same patents were filed years earlier in the Northern District of California, were still pending there, and the presiding judge was already experienced with the patents and the issues.  *See In re Acacia Media Techs. Corp. Patent Litig.*, 360 F. Supp. 2d 1377, 1378 (J.P.M.L. 2005); *see also In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 177 F. Supp. 2d 1375, 1377 (J.P.M.L. 2001) (noting that "the judge . . . has already developed a familiarity with the complex issues in this particular docket as a result of . . . his assignment to other lengthy, now completed litigation involving the same [] plaintiff and [same] patent"); *In re Mosaid Techs., Inc. Patent Litig.*, 283 F. Supp. 2d 1359, 1360-61 (J.P.M.L. 2003) ("[T]he first-filed action is already proceeding apace in that

district.")   In contrast, here, no judge has prior experience with the '295 Patent.  Therefore, the mere fact that the same patent is at issue in all pending matters is vastly outweighed by the far more numerous factual disparities that will have to be addressed in the various, unrelated cases.

Defendants contend that the Delaware and Virginia actions will share common issues of "patent invalidity," stating that the "invalidity defenses of all of the Defendants in both sets of actions are dependent upon, *inter alia*, the meaning of the patent claims, the scope and content of the prior art, the nature of the disclosure of the patents-in-suit, and the facts behind the inventions of the patents-in-suit."  Mot. at 6.  It is axiomatic that patents are commonly litigated in multiple jurisdictions at the same time, and this fact alone does not warrant consolidation.  *See, e.g., In re Shipley Co., Inc. Patent Litig.*, 383 F. Supp. 847 (J.P.M.L. 1974) (Michigan patent litigation not transferred to Massachusetts with pending action declaring patent invalid, where Massachusetts action involved other claims and Michigan action focused solely on infringement and validity; if either court found patent invalid, the estoppel rule would obviate further discovery or trial).  Moreover, to date, no defendant has contested the '295 Patent's validity or enforceability.  As a result, defendants can point to no facts, common or not, related to validity and enforceability (other than pure speculation) that would be shared between the Delaware and Virginia actions.  Defendants do not even identify any alleged prior art in common between the actions, or reference any common theories related to invalidity or enforceability.

In addition, the Virginia actions are likely to proceed expeditiously to trial, well in advance of the Delaware actions.  In the Eastern District of Virginia, the average time to trial is about 11 months.  *See* Exhibit 2, Judicial Caseload Profile Statistics of The Administrative Office of the U.S. Courts for E.D. Va.  In Delaware, on the other hand, the average time to trial is about 35 months, and it can take 6-12 months for the court to rule on a preliminary motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[11]  Therefore, statistically, the Virginia cases will be resolved, or

---

[11] *See* Ex. 3, Judicial Caseload Profile Statistics of The Administrative Office of the U.S. Courts for the D. Del.; Ex. 4, University of Denver, Institute for the Advancement of the American Legal System, *Civil Case Processing in the Federal District Courts* (2009) at 48.

nearly so, before the Delaware court even sets a schedule in those actions.  That could potentially obviate the need for the Delaware cases to proceed at all, reducing or eliminating discovery there and saving the parties substantial expense.  In the unlikely event that any '295 Patent claim is found invalid or unenforceable in Virginia, that decision would apply to Delaware.  *In re Allen Compound Bow Patent Litigation, supra*, 446 F. Supp. 248, at 250 (J.P.M.L. 1974); *In re Bourns Patent Litig.*, 385 F. Supp. 1260 (J.P.M.L. 1974) (In light of the collateral estoppel doctrine, the Panel has "consistently denied transfer of actions in patent litigation where one of the actions was proceeding expeditiously toward trial on the common issue of validity" to obviate further discovery in other actions); *In re Wyeth Patent Infringement Litig.*, 445 F. Supp. at 993 ("[U]nder collateral estoppel principles . . . a holding in one action that the [] patent is invalid would likely prove dispositive of that issue in other actions.")

Defendants incorrectly argue that the risk of inconsistent pretrial rulings on the issue of patent claim construction justifies transfer and consolidation.  Mot. at 3, 7.  However, as a matter of law, "each district court must make its own judgment on the legal issue of claim construction." *Markman, supra,* 517 U.S. at 388-91.  Generally, an issue of law is not an appropriate basis for MDL consolidation.  *In re U.S. Navy Variable Reenlistment Bonus Litig.,* 407 F. Supp. 1405, 1406-07 (J.P.M.L. 1976) (transfer of actions for consolidated pretrial proceedings is unwarranted where common questions of law, rather than fact, predominate).

Here again, in view of the different types of infringing products and uses, different types of technology and platforms utilized, the different types of defendants, and the likely different patent claims at issue, the issues between the Virginia actions and the Delaware actions will widely vary.  There is likely to be little to no overlap of common facts.  Indeed, defendants can point to no specific, common issues between the actions.  On the off chance that there is any overlap, such limited overlap would fall far short of the requisite "sufficiently numerous common fact issues" required for consolidation, particularly when weighed against the substantial burden such consolidation would impose on what would otherwise be expeditious litigation in Virginia.

### B.     Consolidation And Transfer Would Not Promote Convenience

#### 1.     Consolidation of Actions to N.D. Cal. or Delaware Would Not Promote Efficiency or Economy.

Defendants assert that "[c]onsolidation would be more convenient for the parties and witnesses," so as to prevent "duplicative discovery" and "minimize witness inconvenience and overall expense," and that transfer to the N.D. Cal. is appropriate because "thirteen of the Defendants are located" there. Mot. at 8-9.  Defendants conveniently ignore that twelve parties, namely eleven defendants plus the plaintiff TLI, are located on the east coast.  Moreover, the inventor, who has expressed a desire to participate in this matter, is located in Munich, Germany. Defendants also claim that they require discovery from the previous patent owners, three of whom are also located in Munich, Germany, and a previous lien holder, who is located in New York. Virginia and Delaware are 1500 miles closer to Munich than San Francisco.  Put simply, California is far from being "geographically central."

Defendants also ignore the delay, inefficiency, and expense that would necessarily accompany unrelated discovery on different entities and different accused products and technologies.  *See, e.g., In re Wyeth Patent Infringement Litig.*, 445 F. Supp. at 992-93 (in patent litigation across three districts, it was not shown that discovery would be so time consuming as to justify transfer, particularly in light of alternatives to minimize duplicative discovery).  The Virginia actions involve infringement activity that has nothing in common with the infringement activity at issue in the Delaware actions.  Inevitably, the discovery required from these defendants will be unique to each.  The only duplicative discovery that the defendants can speculate may occur relate to, at best, *de minimus* discovery regarding the chain of patent ownership and the inventor.  This is hardly enough to warrant consolidation, especially when there a multitude of avenues the parties can take to minimize any burden (to the extent there is any).  Moreover, any discovery related to patent ownership or the inventor will apply to and be usable in every action.

Thus, whatever minimal efficiencies may result from consolidating the cases because one patent overlaps would be far outweighed by the resulting delay, expense, and inconvenience on each

of the fundamentally different Virginia and Delaware actions if they are forced to go through pretrial proceedings together. *See In re Sicilia Di R. Biebow & Co. Contract Litig.*, 490 F. Supp. 513 (J.P.M.L. 1980) (although Texas suit involved some same questions of fact as a Mississippi action, transfer of Mississippi action to Texas would not serve convenience of parties and witnesses or promote just and efficient conduct of litigation).

Defendants cite to a litany of factually dissimilar cases for the proposition that consolidation and transfer to the Northern District of California or Delaware would be convenient for the parties and witnesses, and minimize overall expenses. Mot. at 9. Importantly, defendants conveniently ignore the respective caseloads of the Court and the fact that only Virginia has a favorable caseload, meaning that Virginia is the only venue that favors judicial economy. Defendants also ignore the fact that transfer to N.D. Cal. or Delaware would result in a potential trebling of the time to trial, resulting in enormous additional expenses for all parties, and be particularly prejudicial to TLI, which is much smaller than any defendant.[12]

Moreover, the cases defendants rely upon involve judges who were already familiar with the patents at issue or had favorable caseloads, or involved later filed, tag-along cases. None of these factors apply here unless Virginia is considered a possible consolidation venue (because of its favorable caseload). Defendants here concede that all actions are at the very early stages of litigation, as defendants have only just filed motions to dismiss. Mot. at 7-8. Thus, neither the Virginia nor the Delaware court has yet had the opportunity to set a schedule, or to explore the myriad unique legal and factual issues that will be at play in both sets of actions. It is thus far too premature to transfer and consolidate the Virginia and Delaware actions.

## 2.      Defendants' Transfer Request Is Intended To Cause Delay.

Defendants' actions belie their true motive, which is to delay these actions in any way possible. For example, when defendants moved under Rule 12(b)(6) to dismiss TLI's original

---

[12] E. Lee III and T. Willging, Fed. Judicial Ctr., Litigation Costs in Civil Cases: Multivariate Analysis: Report to the Judicial Conference Advisory Committee on Civil Rules 2-4 (2010) at 2, 5 (0.32% increase in cost per 1% increase in case duration).

complaints, TLI elected to, rather than contest the motion, bolster its allegations and file amended or new complaints. Nevertheless, defendants moved, yet again, under Rule 12(b) to dismiss TLI's amended complaints, recycling essentially the same motion and same arguments—despite the fact that TLI had addressed those arguments in the new complaints.

Moreover, the moving defendants are attempting to circumvent lack of jurisdiction by seeking to transfer and consolidate all of the actions in the N.D. California. Plaintiff and many of the defendants would not be subject to jurisdiction in California. This improper and ulterior motive alone should warrant a denial of their Motion. *See, e.g., In re: Klein*, 923 F. Supp. 2d 1373, 1374 (J.P.M.L. 2013) (denying motion for centralization where second action in the Middle District of Florida was filed for the "sole [and] . . . improper . . . purpose of effecting the creation of an MDL in the Dist. of D.C., and thus circumventing a possible unfavorable decision on a motion to dismiss" in the first-filed D.C. court for lack of personal jurisdiction) (*citing In re Highway Accident Near Rockville, Conn.*, on Dec. 30, 1972, 388 F.Supp. 574, 576 (J.P.M.L.1975) (denying common plaintiff's § 1407 motion for centralization, where the motion appeared "not motivated by a desire to achieve the purposes for which Section 1407 was designed, but rather, by a desire to circumvent obstacles of personal jurisdiction which necessitated her institution of two separate actions")); *see also In re Truck Acc. Near Alamagordo, New Mexico, on June 18, 1969*, 387 F. Supp. 732, 734 (J.P.M.L. 1975) ("[a]lthough the propriety of in personam jurisdiction in a proposed transferee district is not a criterion in considering transfer of actions to that district under Section 1407, it appears that in this particular litigation plaintiff's ulterior motive for seeking transfer amounts to an attempted misuse of the statute"). Indeed, "[w]here a Section 1407 motion appears intended to further the interests of particular counsel more than those of the statute, [the Panel] would certainly find less favor with it." *In re CVS Caremark Corp. Wage and Hour Employment Practices Litigation*, 684 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010).

Here, TLI respectfully submits, defendants' attempt at further delay should not be countenanced.

### 3.   Alternative Methods Can Achieve Efficiencies Less Burdensomely Than Consolidation.

Centralization under Section 1407 "should be the last solution after considered review of all other options." *In re Gerber Probiotic Products Mktg. & Sales Practices Litig.*, MDL 2397, 2012 WL 4955232 (Oct. 16, 2012) (*citing In re Best Buy Co., Inc.*, *California Song–Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011)).  Thus, where there are alternative methods to prevent duplicative discovery and inconsistent pretrial rulings, consolidation is not warranted.  *In re CMA Mortg., Inc., Fair Credit Reporting Act (FCRA) Litigation*, 536 F. Supp. 2d 1363 (J.P.M.L. 2008) (focus on potential informal cooperation of parties); *In re Depo-Provera Products Liability Litigation*, 499 F. Supp. 2d 1348, 1349 (J.P.M.L. 2007); *In re Commonwealth Sci. & Indus. Research Org. Patent Litig.*, 395 F. Supp. 2d 1357-58 (J.P.M.L. 2005).  This is especially true when the parties are willing to coordinate their discovery efforts.  *In re Cable Tie Patent Litig.*, 487 F. Supp. 1351, 1353 (J.P.M.L. 1980).

The likelihood for that cooperation exists here, particularly in light of TLI's prior conduct and the fact that effectively only two actions are co-pending.  As defendants concede, the fact that (i) TLI previously designated each of the original Delaware actions as a "related case" to the first filed case against Apple, "causing each case to be assigned to the same judge," as well as the fact that (ii) TLI voluntarily dismissed without prejudice the original six actions filed in Delaware on February 11, 2014, and (iii) filed actions against multiple co-defendants joined in the same actions, all demonstrate TLI's willingness to coordinate its discovery efforts with defendants in the future.  Mot. at 3-4.  Additionally, discovery directed to Plaintiffs in one action is likely to apply to all actions.  *See In re Eli Lilly*, *supra*, 446 F. Supp. at 242-44.  Consultation and cooperation among the parties and Courts could also minimize any possibility of conflicting pretrial rulings.  *Id.*  Moreover, in modern litigation, production documents are digitized and can easily be made available across both cases and can easily be produced on disks to any reasonable location.

Alternative methods are the far superior means to avoid duplication and to achieve efficiency (to the extent any would exist), and would avoid the inefficiencies that would result if each of the fundamentally different Virginia and Delaware actions were consolidated.

**C.    To The Extent The Panel Believes Consolidation Is Appropriate,
The Eastern District Of Virginia Is The Most Appropriate Forum.**

**1.    The Eastern District of Virginia Cases
Will Far Outpace Delaware.**

In the alternative, should this Panel decide that defendants have met their burden in showing that transfer and consolidation of the Virginia and/or Delaware actions is justified, TLI requests centralization in the Eastern District of Virginia.  Defendants overlook the convenience, relevance and efficiency of the Eastern District of Virginia.  For example, in deciding MDL transfer motions, the Panel ordinarily looks to the caseloads of possible transferee districts to select one with the most available resources.  *In re Papst Licensing GmbH Patent Litig,* No. 1928, 1999 U.S. Dist. LEXIS 15871, at *5-6 (J.P.M.L. Oct. 12, 1999).  The Eastern District of Virginia's docket can readily absorb the Virginia actions, and potentially even the Delaware actions.

The average time to trial in the Eastern District of Virginia (11.3 months) is about one-third of that of Delaware (34.6 months) and the Northern District of California (31 months).  *See* Exs. 2, 3 and 6, Judicial Caseload Profile Statistics of The Administrative Office of the U.S. Courts for the E.D. Va., Dist. of Del. and N.D. Cal., respectively.  Moreover, as a consequence of the recent changes to patent infringement venue provisions (the so called "America Invents Act"), there has been a steady increase in the number of patent infringement cases filed in Delaware.  *See, e.g.*, Scott W. Burt, Barry F. Irwin and Jonathan B. Tropp, *"Impact of the Misjoinder Provision of the American Invents Act"*, IPO Litigation Committee White Paper, at 4, 14 (2012) (stating that "in the immediate aftermath of the Act, we witnessed an increase in filings in the District of Delaware, where plaintiffs may hope to obtain jurisdiction and venue over multiple defendants incorporated under the laws of that state in individual suits that can nevertheless be coordinated within a single district").  This recent case backlog is further increasing Delaware's time to trial and overall caseload.  For the year ending December 31, 2013, each Virginia judge, on average, handled less than one-half of the caseload of each Delaware judge (305 pending cases per judgeship in the Eastern District of Virginia versus 706 pending cases in Delaware).  *Id.*

In view of the respective caseloads and backlogs, coupled with the fact that Virginia has valuable expertise with complex patent litigation and that it is the district most centrally located for all defendants, plaintiff and third-party witnesses, this factor weighs in favor of, at best, a transfer of all actions to the Eastern District of Virginia but, at worst, the status quo.

2.     **The Eastern District of Virginia Cases Subsume the Delaware Cases.**

The defendants in the Eastern District of Virginia are among the largest companies in the world, including Apple, Inc. (No. 6 on the Fortune 500), Google, Inc. (No. 55), Yahoo!, Inc. (No. 494) and Facebook (No. 482).  The scope of patent infringement by the Virginia defendants is likely to far exceed the scope of patent infringement by the Delaware defendants.  Facebook, for example, purports to have more than 1 billion users who upload over 350 digital images to Facebook *every day*.[13] As of September 2013, Facebook purports to have uploaded over 250 *billion* images.  The issue of damages is thus likely to be of much larger scope in Virginia than Delaware.

Similarly, the number of patent claims at issue in the Virginia is likely to exceed the number of patent claims at issue in Delaware.  Subject to confirmation via discovery, it appears that certain dependent claims may apply solely to Virginia defendants.  For example, '295 Patent dependent claims 12 and 13 require the ability to analyze speech signals.  Such claims would likely apply at least to Apple (*e.g.*, Siri) and Google (*e.g.*, Voice Search), but may not apply to any product of the Delaware defendants.  As a result, the issues involved in the Virginia actions are likely to exceed those in Delaware.  Should the Virginia cases proceed in Virginia, claim construction in Virginia would not only occur earlier, but would likely include more issues than Delaware and would likely subsume the issues in Delaware.

Moreover, in moving to dismiss TLI's original complaints, all of the defendants complained that they were not and could not be responsible for the actions of their customers.  *See, e.g.*, Del. Def's Brief in Support of Mot. to Dismiss, filed Feb. 27, 2014, at 12, 14; *see also, e.g.*, E.D. Va. Def's Brief in Support of Mot. to Dismiss, filed Mar. 12, 2014, at 6-7.  TLI responded by naming certain

---

[13] "A Focus on Efficiency", A Whitepaper from Facebook, Ericsson and Qualcomm, published by Internet.Org, September 16, 2013.

commercial customers, thus expanding the scope of the Virginia actions. *See, e.g.,* Pls.' Compls. at ¶ 2 (E.D. Va., filed Feb. 10, 2014). Those customers are all located in Virginia, as are Lucidiom and Richmond Camera Shop, who offer their own independent, infringing image-uploading platform. It is disingenuous for the Server Defendants to now argue that the Courts should ignore these parties or their location when it was the defendants themselves who demanded their inclusion.

<h3>3.      The Northern District of California is Inappropriate and Irrelevant.</h3>

TLI objects to the Northern District of California as the transferee forum because none of the actions are pending there and it has an unfavorable case load. Further, most of the parties and relevant third-parties, including the plaintiff and inventor, are not located in the Northern District of California, but many thousands of miles from California. Transferring the cases there would substantially increase the burden on Plaintiff and the inventor.

The Panel rarely consolidates to a district with no pending actions unless that district has a "substantial connection to the common factual questions raised in the litigation," for example, where "the plaintiff/patent owner's principal place of business" and the "chief inventors of the asserted patents" are in that district. *In re Sundstrand Data Control, Inc. Patent Litig.,* 443 F. Supp. 1019, 1021 (J.P.M.L. 1978). Defendants concede that TLI's principal place of business is in Wilmington, Delaware, and that Dr. Heinz Mattes, the sole inventor of the '295 Patent, the original and two subsequent assignees of the '295 Patent are located in Munich, Germany. Mot. at 5, 9. Consequently, *Sundstrand* counsels against a transfer to the Northern District of California.

Indeed, the only nexus any of the Virginia and Delaware actions have to California is the fact that thirteen large defendant technology companies have businesses there. Mot. at 8. But the mere presence of a defendant in or around California is not grounds for transfer pursuant to 28 U.S.C. § 1407, and Defendants fail to cite a single supporting authority in this respect.[14] *Cf. In re*

---

[14] Defendants cite to, among other decisions, *In re Mirtazapine, supra,* and *In re Nat'l Century, supra,* to support their argument that transfer and consolidation to the N.D. Cal. or Delaware is warranted. However, in both of those cases the patent owner resided in the same forum as the transferee court, all documents, parties and witnesses were near that forum, and a majority of the actions sought to be consolidated were already pending in that forum. Here, *none* of these facts exist.

*Commonwealth Oil/Tesoro Petroleum Sec. Litig.*, 458 F. Supp. 225, 229 (J.P.M.L. 1978) (holding that the Judicial Panel on Multidistrict Litigation "must consider interest of all parties, and must consider multidistrict litigation as a whole in light of the purposes of Section 1407"); *In re Stirling Homex Corp. Sec. Litig.*, 442 F. Supp. 547, 549 (J.P.M.L. 1977) (same).  In contrast, the Northern District of California is not geographically central to TLI, the six Virginia-based defendants, the four New York-based defendants, the one Massachusetts-based defendant, the Germany-based inventor, or the three Germany-based prior patent owners, as essentially conceded in Defendants' Motion.  *See* Mot. at 4, 8 n.13.

Moreover, Defendants' Motion does not advocate transfer to California based on a related case pending there, a judge's prior experience with the '295 Patent, a judge who has a familiarity with the technology at issue, or because the Court has a favorable case load—because none of these factors exist.  Indeed, in situations where those "responding parties . . . who would be most affected by centralization" are opposed to it, this Panel has found in favor of "leav[ing] the cases where they are currently proceeding."  *In re Student-Athlete Name & Likeness Litigation*, 763 F. Supp. at 1380 (refusing to order transfer of actions from the E. D. Tenn. and the Dist. of N.J. to the N. D. of Cal. where non-movants did "not believe that centralization would be beneficial . . . [since] it would be disruptive to the efficient conduct of each action with little overall benefit").

## IV.   <u>CONCLUSION</u>

In sum, the Motion should be denied because Defendants cannot establish any of the requirements for consolidation and transfer pursuant to 28 U.S.C. § 1407.  For all of the foregoing reasons, TLI respectfully requests that the Panel deny the Motion in its entirety.  In the event the Panel holds that Defendants have met their burden in showing that transfer and consolidation of the Virginia and/or Delaware actions is appropriate, pursuant to 28 U.S.C. § 1407, TLI respectfully requests that the Panel grant its Cross Motion to centralize the actions in the Eastern District of Virginia.

Dated:  New York, New York

      March 20, 2014

                Respectfully submitted,

                MISHCON DE REYA NEW YORK LLP

                By:     /s/ Robert A. Whitman

                    Robert A. Whitman
                    robert.whitman@mishcon.com
                    Mark S. Raskin
                    mark.raskin@mishcon.com
                    Mishcon de Reya New York LLP
                    750 7th Avenue, 26th Floor
                    New York, NY 10019
                    Telephone (212) 612-3270
                    Facsimile (212) 612-3297

                    *Attorneys for Plaintiff TLI*